See also, D.C., 186 F.Supp. 146.

**Lloyd A. POTTER**
v.
**Helen L. McCAULEY.**
No. 12255.

United States District Court
D. Maryland,
Civil Division.
Aug. 18, 1961.

James R. Miller, Sr., G. Richard Park, Rockville, Md., for plaintiff.

Albert G. Aaron, Baltimore, Md., Mark P. Friedlander, Jr., Washington, D. C., for defendant.

CHESNUT, District Judge.

This is a suit to compel specific performance of an alleged written contract for the sale of land. The defense is that on the facts and applicable Maryland law there was no contract; and more particularly that the defendant's offer to sell at a certain price was withdrawn with notice to the plaintiff before the latter had unequivocally accepted the offer.

While there was much irreconcilably contradictory verbal testimony in the

case, the material and controlling facts can and will be shortly stated.

1. In April 1959 the defendant, Mrs. McCauley, a resident of Washington, D. C., was the owner of 23 acres of unimproved land situated in Montgomery County, Maryland, near the Potomac River. Owing to a then existing financial condition she decided to offer the property for sale and engaged Mrs. Knox, a local real estate broker, to find a purchaser at the price of about $35,000, based on an acre valuation of $1,500. Mrs. Knox put up her real estate sign but nothing developed until about September 21, 1959. A day or two before that date Mrs. Knox obtained an offer of $23,000 for the property from the plaintiff, Lloyd A. Potter, a local builder and developer of property in the neighborhood. The price was very materially less than the proposed selling price of $35,000 previously authorized by Mrs. McCauley. Mrs. Knox did not verbally at once submit this offer to Mrs. McCauley but herself wrote up a long proposed contract of sale using what she called the "Maryland" form, properly describing the property but including in typewriting the price of $23,000. In accordance with one of the written terms of this proposed contract, Potter wrote his check payable to the order of Mrs. Knox personally for $2,000, with the notation on the check that it was in relation to the proposed contract of purchase. On September 21, 1959, about 3:00 p. m., Mrs. Knox called upon Mrs. McCauley and tendered the contract to her. Mrs. McCauley refused to accept the price of $23,000 and after about two hours' conversation she was persuaded to sell for $28,750 and at the suggestion of Mrs. Knox the sale price fixed in the contract was changed by Mrs. Knox to read $28,750, and as requested, Mrs. McCauley initialed the changed price in the margin of the contract. At about 5:00 p. m., on the same day Mrs. Knox left with the altered paper which had been previously signed by Mr. Potter and was also then signed by Mrs. McCauley. There were four copies of the contract which had been signed by Potter and all of which were then altered as stated and initialed by Mrs. McCauley.

2. Shortly after Mrs. Knox left, Mrs. McCauley on further thought about the matter, feeling that she had been overpressed to sell at the lower price than she had previously authorized, and no longer being under financial pressure to sell, telephoned Mrs. Knox that she had reconsidered and withdrew the offer to sell at the changed price and requested Mrs. Knox to return the papers. This telephone conversation withdrawing Mrs. McCauley's offer was before 7:00 p. m. In the meantime, however, Mrs. Knox had taken the four copies of the contract as so altered to Potter's home but finding he had not returned from work at that time, gave them to his wife to be given to Mr. Potter.

3. Promptly after receiving Mrs. McCauley's notice of the withdrawal of the counter-offer, Mrs. Knox talked to Potter by telephone and in this conversation I find that (1) Mrs. Knox notified Potter that Mrs. McCauley had withdrawn the counter-offer indicated in the papers and asked for their return and (2) Potter stated that he had received and read the papers noting the changed price and had at once without further consideration "accepted" the counter-offer and had initialed the changed price (presumably on all four copies). As to the return of the papers, Potter said that it was late in the day and the matter could go over until the next day.

4. The next morning Mrs. Knox called to see Potter and again asked for the return of the papers but Potter said that he wanted to check over one or two matters before doing so. As Potter expressed it in his testimony, he was "stalling" Mrs. Knox because he suspected there was some "gimmick" in the matter. What Potter meant by this was not made clear at the time but Potter subsequently explained that one of the things he wanted to look into was whether he had available cash to pay for the property. On that same day Potter deposited in his

checking account funds sufficient to have paid for the property at the altered price of $28,750. But it was not until the next day, September 23, 1959, that he returned the papers to Mrs. Knox.

5. The next day, September 24, 1959, Mrs. Knox met Mrs. McCauley in the presence of a friend of Mrs. McCauley, a Mrs. Skylstead, and returned to Mrs. McCauley one signed copy of the alleged contract and expressed her view that because Mr. Potter had accepted the change in price, Mrs. McCauley was bound and would have to comply. Mrs. McCauley, however, refused to accept the view and stated that as she had withdrawn the offer she would not comply.

6. Thereafter, apparently by request from Potter, the Suburban Title Company of Bethesda, Maryland, by letter dated October 14, 1959, notified Mrs. McCauley that October 20, 1959 was set for the "settlement" of the contract. Thereupon Mr. Friedlander, as counsel for Mrs. McCauley, by letter dated October 16, 1959, notified the Title Company that Mrs. McCauley would not attend on October 20th because her offer of sale had been withdrawn prior to acceptance by the purchaser. And by letter dated October 19, 1959 Potter advised Friedlander that he would hold Mrs. McCauley to the contract because "I had accepted the contract of sale with Mrs. McCauley before any attempt on her part to withdraw it".

7. I find as a fact that the defendant's counter-offer to sell her property for $28,750 was withdrawn by her notice thereof given to the plaintiff prior to an unconditional and unequivocal acceptance by him of the counter-offer. I conclude, therefore, under the applicable law, that judgment in the case must be entered for the defendant.

## Discussion

■■ . The jurisdiction of the court in this case is diversity of citizenship. Therefore the Maryland law governs. The applicable Maryland law (substantially similar, I think, to the general American law upon the subject) is that where one party makes a counter-offer to another, the former has the right to withdraw the offer at any time upon notice to the latter prior to the latter's unequivocal acceptance of the counter-offer, and notice thereof to the former. Md.Law Ency. Vol. 5, Contracts, ss. 23, 24 and 25, pp. 374–378; A.L.I.Restatement of Contracts, ss. 41 and 58; Williston on Contracts, 1936 Ed. Vol. 1, s. 72. A recent Maryland case upon the subject is Baker v. Dawson, 1958, 216 Md. 478, 141 A.2d 157, 161, where many of the facts are quite similar to the instant case but varying importantly therefrom in some particulars. That case also involved a suit for specific performance for the sale of land under a written contract. The price first offered was unacceptable to the seller but he made a counter-offer by changing the figure in the margin to a higher figure and then initialed the change in the margin of the contract. The seller's counter-offer was by his agent submitted in person to the buyer who, in turn, in the presence of the seller's agent, accepted the counter-offer as to price by initialing the change in the margin of the contract which he had already signed; and promptly thereafter the agent advised the seller of the buyer's acceptance. Thereupon the agent proceeded to make a clear copy of the contract with the changes previously agreed upon, and this caused some delay in the final settlement. The seller refused to complete the contract on the ground of this delay but the court held that the contract should be specifically enforced because the counter-offer had been unequivocally accepted by the seller by his initialing the changed price in the presence of the seller's agent, of which the seller had been properly notified. In the course of the opinion it was said by Chief Judge Brune for the Court, quoting from Williston on Contracts—" 'If there has once been unequivocal acceptance, the contract is complete and its binding force cannot be affected by subsequent communications unless they amount to a mutual agreement to rescind or aban-

don the contract'". The important and controlling difference between the facts in the Dawson case and the instant case is that in the Dawson case there was no effort on the part of the seller to withdraw the counter-offer prior to its acceptance by the buyer; while in the instant case it is clearly established that the seller making the counter-offer did notify the agent of the withdrawal which was communicated to the buyer before his unequivocal acceptance of the counter-offer. This case therefore requires a different conclusion under the applicable Maryland law by reason of the important difference in the facts.

See also the later Maryland case of Post v. Gillespie, 1959, 219 Md. 378, 149 A.2d 391 where specific performance of a written offer to sell land was refused because the acceptance was not unconditional and unequivocal.

■ Counsel for the plaintiff concedes that to prevail he must establish by a preponderance of the evidence that the plaintiff did unequivocally accept the counter-offer *before* it was disclosed to him by Mrs. Knox that the counter-offer was withdrawn. He contends that the evidence requires this conclusion as a matter of fact by reason of the sequence of the telephone conversation, and he refers to the testimony of both Mrs. Knox and the plaintiff to support that view. This evidence in effect was that at the very beginning of the telephone conversation of September 21, 1959 about 7:00 p. m., Mrs. Knox said to Mr. Potter "Did you receive the contract", to which the latter responded "Yes, and I have at once accepted the counter-offer as to price and initialed the change"; and that only thereafter did Mrs. Knox say that Mrs. McCauley had withdrawn the offer and asked for a return of the papers.

It is to be noted that the contract was in four separate copies and that the change in the price was a very substantial one and that Mrs. Knox had had no contact with Potter subsequent to his

giving her the four copies with the designated sale price of $23,000 until he received her telephone call. Bearing in mind the nature of the transaction and the circumstances leading up to this telephone conversation and the small interval of time and the interest of the parties respectively in the outcome of the case and the hearing of the testimony of these witnesses, I am not satisfied by the weight of the credible evidence that the sequence of the three important facts involved in the conversation was that related by the parties to the telephone conversation. It seems to me quite improbable that it would have occurred in that precise sequence. There is, I think, no doubt that in the conversation (1) there was notice to the plaintiff that the counter-offer had been withdrawn; (2) that Mrs. Knox, as instructed by Mrs. McCauley, asked for the return of the papers containing her counter-offer; (3) that some time during the conversation Potter said that the price in the counter-offer was acceptable to him and (4) that he did not at once return the papers as requested. It seems to me a very slender basis for the requirement of specific performance based only on the precise sequence of these four facts. It was clearly the duty of the broker to very promptly communicate to the purchaser the fact of the withdrawal of the counter-offer. Indeed that was the object of and the reason for her telephone call to Potter.

But even if it could be properly found that the sequence of the telephone conversation was as contended for by counsel for the plaintiff, still I find on the testimony of the plaintiff himself that his "acceptance" of the counter-offer was not unequivocal. It is undisputed that he physically retained the four copies of the paper allegedly containing his marginal initialing of the change in the contract price as originally written until some time on September 23, 1959, about two days after he was notified of the seller's withdrawal and request for the return of the papers. And I find that his testimony

as to his reasons for this retention were at least ambiguous, if not evasive. As he himself expressed it, his delay in returning the papers as requested was that he suspected some "gimmick" and wanted to think about it. The reason assigned by him to Mrs. Knox on the next day, September 22, 1959, for the delay in the return of the papers was that he had one or two matters that he wished to "check". Later he explained that he wanted to be sure that he had available money in the bank to pay for the changed contract price; and in fact it appeared that on the next day he did deposit a sufficient sum to meet this contract price. His action in delaying the return of the papers for two days was inconsistent with his verbal testimony that he had fully accepted the counter-offer immediately upon reading the change in the papers and initialing all four copies. As the counter-offer related to land, the purchaser could not be held liable for acceptance of the counter-offer so long as he withheld the return of the papers bearing his written assent to the much higher price. I think the necessary conclusion is that he felt that so long as he withheld the papers it was open to him either to accept or decline the counter-offer. If he had unconditionally accepted the counter-offer by marginally initialing the changed price, there was no reason why the papers should not have been returned immediately upon the telephone request, or at least the next morning when again requested by the broker.

Counsel for the defendant contends that the delivery of the contract with the plaintiff's signed concurrence was necessarily required to show his acceptance of the counter-offer. The even more important point in this case is that the withdrawal of the offer was communicated to the offeree *before* the latter had unequivocally accepted the offer by the return of the papers.

For these reasons I conclude that the plaintiff's complaint should be and is hereby *dismissed* this 18th day of August, 1961, and the Clerk is instructed to enter judgment for the defendant.